UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| BRENDA MICHELLE BERRY, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | No. 1:15-cv-201-HSM-SKL |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| *Defendant*. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Brenda Michelle Berry ("Plaintiff") brought this action pursuant to 42 U.S.C. 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her supplemental security income ("SSI"). Each party moved for a judgment [Docs. 11 & 14] with supporting briefs [Docs. 12 & 15]. For the reasons stated below, I **RECOMMEND** that (1) Plaintiff's motion for summary judgment [Doc. 11] be **GRANTED IN PART** to the extent it seeks remand to the Commissioner and **DENIED IN PART** to the extent it seeks an award of benefits; (2) the Commissioner's motion for summary judgment [Doc. 14] be **DENIED**; and (3) the decision of the Commissioner be **REVERSED** and **REMANDED** pursuant to Sentence Four of 42 U.S.C. § 405(g).[1]

### I. ADMINISTRATIVE PROCEEDINGS

On March 20, 2012, Plaintiff filed an application for SSI alleging disability as of June 1, 2004 [Doc. 7, Transcript "(Tr.)" 140-45]. Plaintiff's claim was denied initially and upon reconsideration, and she requested a hearing before the ALJ (Tr. 67-70, 76-78). The ALJ held a hearing on February 11, 2014, during which Plaintiff was represented by an attorney (Tr. 26-40).

---

[1] Section § 1383(c)(3) of Title 42 provides that "[t]he final decision of the Commissioner . . . shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title." 42 U.S.C. § 1983(c)(3).

Plaintiff requested during the hearing that her prior application which was filed on September 22, 2011 be reopened, thus making Plaintiff's alleged disability onset date September 22, 2011 (Tr. 28-29). The ALJ issued an unfavorable decision on March 21, 2014, finding Plaintiff was not disabled because she could perform a full range of medium work at the unskilled level (Tr. 9-20). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final, appealable decision of the Commissioner (Tr. 1-3). Plaintiff timely filed the instant action seeking judicial review of the Commissioner's unfavorable decision [Doc. 1].

## II. FACTUAL BACKGROUND

### A. Education and Employment Background

Plaintiff was born in 1991, was 21 years old on the date of filing her application, and had a tenth grade education (Tr. 19, 162). Plaintiff does not have any past relevant work and has only worked for two weeks at a fast food restaurant in 2008 (Tr. 11, 19, 162).

### B. Medical Records

In her Disability Report, Plaintiff alleges disability due to bipolar disorder, oppositional defiant disorder ("ODD"), and marijuana abuse (Tr. 182).[2] Only select portions of Plaintiff's medical records will be addressed within the respective sections of the Court's analysis below, but all relevant records have been reviewed.

### C. Hearing Testimony

The Court has carefully reviewed the transcript of the hearing testimony. While it is not necessary to summarize the testimony herein, the testimony will be addressed as appropriate within the respective sections of the Court's analysis below.

---

[2] In a pre-hearing memorandum dated February 11, 2014, Plaintiff's attorney listed alleged disability due to Schizophrenia, anxiety disorder, oppositional defiant personality disorder, and borderline to low average intellectual functioning (Tr. 223-24).

## III. ELIGIBILITY AND THE ALJ'S FINDINGS

### A. Eligibility

"The Social Security Act defines a disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637, 646 (6th Cir. 2013) (quoting 42 U.S.C. § 423(d)(1)(A)); *see also Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 862 (6th Cir. 2011) (quoting 42 U.S.C. § 423(d)(1)(A)). A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Parks*, 413 F. App'x at 862 (quoting 42 U.S.C. § 423(d)(2)(A)). The Social Security Administration ("SSA") determines eligibility for disability benefits by following a five-step process. 20 C.F.R. § 404.1520(a)(4)(i-v). The five-step process provides:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.

3

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009). The claimant bears the burden to show the extent of his or her impairments, but at step five, the Commissioner bears the burden to show that, notwithstanding those impairments, there are jobs the claimant is capable of performing. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512-13 (6th Cir. 2010).

      **B.**      **The ALJ's Findings**

At step one of the process, the ALJ found Plaintiff had not engaged in any substantial gainful activity since September 22, 2011, the prior application date and the alleged onset date (Tr. 11). At step two, the ALJ found Plaintiff had the following severe impairments: Schizophrenia, paranoid type; bipolar disorder; oppositional defiant personality disorder; and cannabis abuse (Tr. 11-14). At step three, the ALJ found Plaintiff did not have any impairment or combination of impairments to meet or medically equal any presumptively disabling impairments listed at 20 C.F.R. Pt. 404, Subpt. P, App'x 1 (Tr. 15). The ALJ determined Plaintiff had the residual functional capacity ("RFC") to perform the full range of medium work at the unskilled level "with the ability to understand, remember, and carry out simple instructions; make work-related judgments typically required for unskilled work; respond appropriately to supervision, co-workers, and work situations; have contact with the public on a rare basis and with supervisors and co-workers on an occasional basis; and the ability to deal with changes in a routine work setting on an infrequent basis" (Tr. 15-19). At step four, the ALJ found that Plaintiff had no past relevant work (Tr. 19). After considering Plaintiff's age, education, work experience, and RFC, the ALJ found there were jobs that existed in significant numbers in the national economy which Plaintiff could perform (Tr. 19-20). These findings led to the ALJ's determination that Plaintiff was not under a disability at any time from September 22, 2011, the date of the prior application, through March 21, 2014, the date of the ALJ's decision (Tr. 20).

4

## IV. ANALYSIS

Plaintiff alleges that the ALJ erred by (1) failing to properly consider and address the two consultative examiner medical source opinions and instead substituting his own opinion, and (2) determining that Plaintiff retains the ability to respond appropriately to supervision, co-workers, and work situations, to have contact with the public on a rare basis and with supervisors and co-workers on an occasional basis, and to deal with changes in a routine work setting on an infrequent basis, which is not supported by substantial evidence. Defendant argues that substantial evidence supports (1) the ALJ's evaluation of the medical opinions in determining Plaintiff's RFC, and (2) the ALJ's decision that Plaintiff was not fully credible and retained the RFC to perform unskilled, medium work.

### A. Standard of Review

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence. 42 U.S.C. § 405(g); *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (internal citations omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *McClanahan*, 474 F.3d at 833 (internal citations omitted). Furthermore, the evidence must be "substantial" in light of the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (internal citations omitted). If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387. The substantial evidence standard allows considerable latitude to administrative

5

decision makers because it presupposes "there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *McClanahan*, 474 F.3d at 833 (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)).

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may not, however, consider any evidence which was not before the ALJ for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sept. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claims of error without further argument or authority may be considered waived).

### B. Substantial Evidence and Credibility

The ALJ determined that Plaintiff's allegations of disabling mental impairments were not entirely credible. The ALJ based his credibility assessment on his findings that Plaintiff's treatment with prescribed psychotropic medications and counseling allowed her to perform some work activities and that Plaintiff's failure to keep scheduled appointments and noncompliance in taking prescribed psychotropic medications suggested that her symptoms were not as limiting as Plaintiff alleged (Tr. 16). Plaintiff argues that, while she has not taken prescribed medications regularly, she has been unable to do so because she has been pregnant three times during the

6

period in question [Doc. 12 at Page ID # 730].[3]  At the time of the hearing, Plaintiff, who was then 23, was pregnant with her sixth child (Tr. 30-31).  Plaintiff contends that her noncompliance with prescription medications "must be tempered with the reality of her pregnancies and with the likelihood that avoidance of treatment is characteristic of her psychological conditions" [Doc. 12 at Page ID # 730].  Defendant does not address or respond to Plaintiff's arguments about the reasons for her noncompliance with prescribed medications, including the impact of her multiple pregnancies.

The record details, and the ALJ's opinion summarizes, Plaintiff's long history with mental impairments beginning at a very young age.  Since the age of sixteen, Plaintiff has been pregnant six times, and her sixth pregnancy was ongoing during the hearing in this matter (Tr. 30-31, 223).  Plaintiff has been prescribed with various prescription medications to treat her mental impairments, and the record documents periods of noncompliance, including during multiple pregnancies.  There is little, if any, discussion in the record, however, of the possible reasons for her noncompliance and whether compliance would have eliminated symptoms of Plaintiff's mental impairments and restored her ability to work.  The ALJ does not discuss whether good reasons exist for Plaintiff's noncompliance and whether Plaintiff's severe mental impairments contributed to or caused her noncompliance.  Further complicating this matter are Plaintiff's six pregnancies, which the ALJ ignores in relation to noncompliance.  Rather, the ALJ merely concludes that Plaintiff's noncompliance suggests her symptoms are not as limiting as Plaintiff alleges (Tr. 16).

Social Security regulations require claimants to follow the treatment prescribed by his or her physician "if this treatment can restore [the claimant's] ability to work." 20 C.F.R. §

---

[3] Plaintiff states that "[o]ne cannot take psychotropic medications while pregnant" [Doc. 12 at Page ID # 724].  The medical record simply notes that "[s]he was warned again to avoid getting pregnant while on medications" (Tr. 527).

7

404.1530(a). If the claimant fails to follow the prescribed treatment "without a good reason," he or she will not be found to be under a disability. 20 C.F.R. § 404.1530(b). "For some mental disorders, the very failure to seek treatment is simply another symptom of the disorder itself." *White v. Comm'r of Soc. Sec.,* 572 F.3d 272, 283 (6th Cir. 2009) (citing *Pate–Fires v. Astrue,* 564 F.3d 935, 945 (8th Cir. 2009)). "[F]ederal courts have recognized a mentally ill person's noncompliance with psychiatric medications can be, and usually is, the 'result of [the] mental impairment [itself] and, therefore, neither willful nor without a justifiable excuse.'" *Pates–Fires,* 564 F.3d at 945 (brackets in original) (quoting *Mendez v. Chater,* 943 F. Supp. 503, 508 (E.D. Pa. 1996)); *see also Frankhauser v. Barnhart,* 403 F. Supp. 2d 261, 277–78 (W.D.N.Y. 2005) (holding an ALJ must take into account whether a mentally ill (bipolar and personality disordered) claimant's failure to comply with prescribed treatment results from the mental illness itself); *Brashears v. Apfel,* 73 F. Supp. 2d 648 650–52 (W.D. La. 1999) (remanding case for consideration of whether the claimant's noncompliance with prescribed treatment was excusable due to a mental impairment).

Here, the ALJ's analysis about claimant's treatment with prescription psychotropic medications is confusing at best. In assessing Plaintiff's credibility, the ALJ states:

> The objective medical record establishes the claimant has a history of schizophrenia, paranoid type; bipolar disorder; oppositional defiant personality disorder; and cannabis abuse. A degree of limitation can reasonably be expected to result from such a history. However, **following the claimant's treatment with prescribed psychotropic medications and counseling, the medical record does not show significant abnormalities to account for her alleged disabling symptoms and the clinical signs do not reflect a level of impairment that would preclude all work activity.**

8

(Tr. 16 (emphasis added)). The ALJ's decision provides no citations to the record to support this conclusion about the effect of prescribed psychotropic medications on Plaintiff's mental impairments and her ability to work.[4] Then, the ALJ states:

> she testified that she has only worked one time for two weeks in 2008, and was fired from that job for not going to work, which raises some questions as to whether the being unemployed lifestyle is truly the result of mental problems. I have noted that the claimant did not show for many of her scheduled appointments or cancelled the appointments, which suggests that her symptoms may not have been as serious as she has alleged. **In addition, there is evidence the clamant [sic] has not been entirely compliant in taking the prescribed psychotropic medications, which again suggests that her symptoms may not have been as limiting as she has alleged.**

(Tr. 16 (emphasis added)). As argued by Plaintiff, the ALJ never addresses whether noncompliance was the result of the underlying mental health impairments rather than because of a willful decision by Plaintiff. While the ALJ relies upon Plaintiff's noncompliance with prescription medications to support his RFC finding, the ALJ has not included an explanation or discussion of the reasons (supported by the record) for his determination that noncompliance indicates a lack of alleged symptoms. Thus, the Court cannot determine whether the ALJ

---

[4] The ALJ refers to an unidentified "recent examination" performed at Volunteer Behavioral Health Care System which the ALJ states revealed that "the claimant's appearance, gait and station, speech, thought process, associations, judgment and insight, orientations, recent and remote memory, attention and concentration, language, and fund of knowledge were all within normal limits" (Tr. 16). The ALJ does not discuss whether Plaintiff was adhering to a prescribed psychotropic prescription regimen at the time. The ALJ provides no citation to, or other identifying information about, this examination, and the Court need not hunt through the voluminous record looking for one. *See Emerson v. Novartis Pharm. Corp.*, 446 F. App'x 733, 736 (6th Cir. 2011) (holding that "[j]udges are not like pigs, hunting for truffles that might be buried in the record.") (internal citation, quotation marks, and alteration omitted); *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989) (noting that a district court is neither required to speculate on which portion of the record a party relies, nor is it obligated to "wade through" the record for specific facts).

9

followed the SSA's regulations and whether there is substantial evidence in the record to support the ALJ's determination.

Social Security Ruling 82–59 explains the ALJ's obligations when a claimant is not following prescribed treatment:

> Where the treating source has prescribed treatment clearly expected to restore ability to engage in any SGA [Substantial Gainful Activity] (or gainful activity, as appropriate), but the disabled individual is not undergoing such treatment, appropriate development must be made to resolve whether the claimant . . . is justifiably failing to undergo the treatment prescribed.
>
> *Development With the Claimant or Beneficiary* -- The claimant . . . should be given an opportunity to fully express the specific reason(s) for not following the prescribed treatment. Detailed questioning may be needed to identify and clarify the essential factors of refusal.
>
> The record must reflect as clearly and accurately as possible the claimant's . . . reason(s) for failing to follow the prescribed treatment.
>
> Individuals should be asked to describe whether they understand the nature of the treatment and the probable course of the medical condition (prognosis) with and without the treatment prescribed. The individuals should be encouraged to express in their own words why the recommended treatment has not been followed. They should be made aware that the information supplied will be used in deciding the disability claim and that, because of the requirements of the law, continued failure to follow prescribed treatment without good reason can result in denial or termination of benefits.

Social Security Ruling 82–59, 1982 WL 31384, at *2 (1982) (italics in original). During the hearing, the ALJ did not ask Plaintiff why she did not take prescribed medications. Rather, Plaintiff's counsel asked Plaintiff if taking the medications during the brief period when she was not pregnant and able to take the medications made all of the voices go away and Plaintiff responded that they did not go away (Tr. 33). Plaintiff further testified that she got mad because

the medicines made her sleepy and depressed and she still heard voices, saw things, and was still paranoid (Tr. 33).

The ALJ erred in this case by not addressing whether Plaintiff's noncompliance with her prescription-medication regimen manifested from her severe mental impairments and also the fact that she had been pregnant. *See Burge v. Comm'r of Soc. Sec.*, No. 1:3 CV 87, 2013 WL 6837192, at * 4 (N. D. Ohio Dec. 26, 2013) (holding remand appropriate because "the ALJ does not discuss or make any findings of [claimant's] alleged cause for noncompliance for the period between the onset and applications dates in 2009 and the report of improvement with medication in July of 2010"); *Franklin v. Astrue*, No. 3:09CV00242, 2010 WL 2667388, at *8-9 (S.D. Ohio June 10, 2010) *report and recommendation adopted,* No. 3:09-CV-00242, 2010 WL 2653332 (S.D. Ohio June 30, 2010) ("The ALJ erred in Plaintiff's case by not addressing whether his periodic noncompliance with his prescription-medication regimen manifested from his severe mental impairments including, in part, schizophrenia or schizoaffective disorder. Indeed, the ALJ's decision simply overlooked or ignored whether Plaintiff's severe mental impairments, schizophrenia or schizoaffective disorder, contributed to or caused his noncompliance with prescribed treatment."); *Pates–Fires,* 564 F.3d at 945; *see also White,* 572 F.3d at 283; *Blankenship v. Bowen,* 874 F.2d 1116, 1124 (6th Cir. 1989) ("Appellant may have failed to seek psychiatric treatment for his mental condition, but it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation."). In light of the information in the record and the requirements of SSR 82-59, the ALJ should have questioned Plaintiff in more detail to try to determine and clarify the factors and reasons for her failure to comply with and follow the prescribed treatment. Further, based on the record as a whole, it is not clear whether Plaintiff's compliance with the prescribed treatment would have restored her ability to perform substantial gainful activity. The ALJ's decision overlooked or

11

ignored whether Plaintiff's severe mental impairments and her pregnancies contributed to or caused her noncompliance with prescribed treatment, and the ALJ merely concluded that Plaintiff's noncompliance in taking prescribed psychotropic medications suggested that her symptoms were not as limiting as Plaintiff alleged (Tr. 16).

Accordingly, I **FIND** that the ALJ erred by failing to follow the requirements of 20 C.F.R. § 404.1530 and SSR 82-59 and determine whether there were good reasons for Plaintiff's noncompliance in taking prescribed psychotropic medications, and thus, the Court cannot determine whether the ALJ's conclusions are supported by substantial evidence in the record. Accordingly, I **CONCLUDE** that Plaintiff is entitled to have the case remanded to the SSA pursuant to Sentence Four of § 405(g) for the SSA to address and resolve whether Plaintiff's noncompliance with taking prescribed psychotropic medications manifested from one or more of her severe mental impairments and her multiple pregnancies. Plaintiff is forewarned that this report and recommendation expresses no opinion, and has no bearing, on the ultimate decision that may result after remand and the proper application of the SSA regulations.

### C. Substantial Evidence and the RFC

I will also briefly address Plaintiff's RFC. The ALJ determined that Plaintiff had the capacity to perform a full range of unskilled, medium work "with the ability to understand, remember, and carry out simple instructions; make work-related judgments typically required for unskilled work; respond appropriately to supervision, co-workers, and work situations; have contact with the public on a rare basis and with supervisors and co-workers on an occasional basis; and the ability to deal with changes in a routine work setting on an infrequent basis" (Tr. 15). Dr. Ronal E. Smith, Ph.D., a licensed psychologist, performed a psychological evaluation in November 2011 at the request of the SSA (Tr. 12, 444-48). Dr. Smith determined that Plaintiff's limited cooperation during the assessment was characteristic of her psychological conditions

12

rather than malingering, and he believed his assessment to be an accurate reflection of Plaintiff's current functioning (TR. 13, 446). Dr. Smith opined that there would be severe restrictions on Plaintiff's functioning in a work setting due to her mental impairments in that she would be expected to have significant problems in carrying out simple instructions because of paranoid thought processes and social interactions would likewise be severely restricted because of her extreme anger problems (Tr. 13, 447). The ALJ gave Dr. Smith's findings and opinions "considerable weight . . . because they are consistent with the clinical findings of the state agency consultant and the record as a whole, and are not inconsistent with my findings, except concerning her activities of daily living" (Tr. 18).

David J. Caye, M.S., a licensed senior psychological examiner, performed a psychological evaluation in July 2012 at the request of the SSA (Tr. 13, 575-82). Mr. Caye determined that the mental status examination was completely invalid and there was evidence of ongoing magnification of symptoms (Tr. 14, 579). He opined that Plaintiff had mildly restricted social interaction patterns with her peers, moderately to markedly restricted social interaction patterns with co-workers, and markedly restricted social interaction patterns with supervisors (Tr. 14, 18, 580). He further opined that Plaintiff's passive-aggressive-like behavior was ongoing and Plaintiff would likely attempt to sabotage interactions in work positions (Tr. 14, 18, 580). The ALJ afforded Mr. Caye's findings "only some weight, as Mr. Caye is a non-treating source, who only saw the claimant one time, and his functional limitations are too restrictive" (Tr. 18).

Plaintiff argues that the ALJ's RFC fails to acknowledge the objective findings of Dr. Smith who found that Plaintiff's psychological impairments in a work setting caused severe restrictions across the board [Doc. 12 at Page ID # 728]. Plaintiff further contends that, if the ALJ gave Dr. Smith's opinions "considerable weight" and the ALJ found them to be consistent with his own findings as the ALJ stated, then the ALJ should have found Plaintiff to be disabled

13

due to her severe restrictions particularly in carrying out simple instructions due to paranoid thought processes and in her social interactions because of her extreme anger problems [Doc. 12 at Page ID # 728]. Defendant responds that, while the ALJ gave considerable weight to Dr. Smith's opined limitations and some weight to Mr. Caye's opined limitations, he did not adopt any of the limitations verbatim and he was not required to do so because Dr. Smith and Mr. Caye were not treating sources [Doc. 15 at Page ID # 744]. Defendant further argues that the ALJ upon considering the record as a whole found that Plaintiff could respond appropriately to supervision, co-workers, and work situations [*id.*].

The ALJ found that Plaintiff's admissions to the consulting psychologist that she went shopping with her mother, spent time with her brother, played with her children, watched television, interacted socially with her brother and his friends, and took her children to the playground were evidence of activities of daily living that supported the ALJ's RFC determination (Tr. 17). The record documents Plaintiff's allegations of anger and aggression around people in part because she believed they were laughing or talking about her or that they were going to hurt her (Tr. 11, 13, 31-32, 444-45, 576). Dr. Smith and Mr. Caye opined about restrictions in her interactions with co-workers and supervisors. The ALJ did not discuss any evidence in the record that supported his finding that Plaintiff responded appropriately to supervision, co-workers, and work situations, which appears to be contrary to objective evidence.

Rather, the ALJ relied upon his findings about Plaintiff's daily living activities to support his RFC determination that Plaintiff responded appropriately to supervision, co-workers, and work situations. These findings about Plaintiff's activities of daily living, however, do not address or relate to Plaintiff's alleged anger and aggression issues with supervisors and co-workers. The ALJ's opinion does not support adequately his determination that Plaintiff responds appropriately to co-workers and supervision. As the recommendation is that this matter

14

be remanded to address noncompliance with taking prescribed psychotropic medications, it is further recommended that the ALJ should further develop whether Plaintiff responds appropriately to supervision, co-workers, and work situations.[5] *See* 42 U.S.C. § 405(g) (empowering the reviewing court, in Sentence Four, to remand a cause to the Commissioner).

## V. CONCLUSION

Having carefully reviewed the administrative record and the parties' arguments, I **RECOMMEND**[6] that:

1) Plaintiff's motion for summary judgment [Doc. 11] be **GRANTED IN PART** to the extent it seeks remand to the Commissioner and **DENIED IN PART** to the extent it seeks an award of benefits;

2) The Commissioner's motion for summary judgment [Doc. 14] be **DENIED**.

3) The Commissioner's decision denying benefits be **REVERSED** and **REMANDED** pursuant to Sentence Four of 42 U.S.C. § 405(g).

                                                 s/ *Susan K. Lee*
                                                 SUSAN K. LEE
                                                 UNITED STATES MAGISTRATE JUDGE

---

[5] While Plaintiff has raised additional arguments as to the appropriateness of the ALJ's RFC determination, the Court is not addressing these remaining arguments since the Court has determined that remand is appropriate for the Commissioner to address issues concerning the ALJ's RFC determination. The undersigned emphasizes, however, that no particular result is dictated on remand.

[6] Any objections to this report and recommendation must be served and filed within 14 days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive, or general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).